UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY

    Plaintiff,

                                                    Case No. 16-14250

v.

                                                   Honorable Victoria A. Roberts

TRIDENT BARROW MANAGEMENT 22, LLC,

    Defendant.
_____/

## ORDER DENYING DEFENDANT'S AMENDED MOTION FOR SUMMARY JUDGMENT [Doc. 39]

Ford Motor Company ("Ford"), filed a complaint against Trident Barrow Management, LLC ("Trident") on November 11, 2016. Ford alleges in Count I that Trident's refusal to execute a restrictive covenant upon Ford's request breaches the express terms of an Environmental Cooperation Agreement ("ECA") between the parties. Ford alleges in Count II that Trident's refusal violated Part 201 of Michigan's Natural Resources and Environmental Protection Act ("NREPA"), MCLA §324.20101 *et seq*. Ford seeks specific performance and injunctive relief.

Trident's amended motion for summary judgment ("Motion") is DENIED.

I.      Background

In December 2012, Ford sold Trident the majority of the acreage of the former Wixom Assembly Plant ("Wixom Site"), where Ford assembled automobiles from 1957 through 2007. On December 21, 2012, Ford and Trident entered into the ECA. It sets forth obligations of Ford and Trident in remediating the environmental conditions of the

1

Wixom Site. Under Section 2.01(a) of the ECA, Ford agreed, at its own expense, to "use commercially reasonable efforts" to complete remedial actions to ensure that the Wixom Site complied with Part 201 and Part 213 of the NREPA. [Motion, Ex. 3, Pg. 5].

Section 2.01(b) of the ECA states that the Ford Remediation Activities "may involve the imposition and recording of restrictive covenants and/or the implementation of the institutional controls limiting certain activity on and uses of the Wixom Plant Property." *Id.*

Under Section 3.03(e) of the ECA, Trident agreed to cooperate with Ford in carrying out the Ford Remediation Activities, and to execute upon Ford's request any restrictive covenant that is a component of Ford's Remediation Activities. *Id.* at 11.

On July 26, 2016, Ford sent Trident a letter saying that Ford had completed its on-site remediation work; no further Ford Remediation Activities were planned at the Wixom Site. [Motion, Ex. 6, Pg. 1]. Ford attached a restrictive covenant, which, *inter alia*, would prohibit the site from being developed for residential purposes, and for the site's groundwater to be used for drinking or irrigation purposes. *Id.* The letter stated that the restrictive covenant to be signed by Trident, would need to be submitted to the Michigan Department of Environmental Quality ("MDEQ") along with Ford's No Further Action ("NFA") Reports as required by Part 201 of the NREPA.

Before signing the restrictive covenant, Trident sought to confirm that Ford had completed its remediation obligations under Section 2.01(a) of the ECA. Trident says that it discovered that Ford submitted Underground Water Storage Tank (UST) Closure Reports, as required by Part 213 of the NREPA, with false information. Specifically,

2

each Closure Report (submitted November 2013, March 2014, and January 2015) cover sheet had this question: "Is site within a wellhead protection zone?" Ford marked "No" to this question on each of the cover sheets. [Motion, Exs. 7, 8]. According to Trident, because the USTs are located within multiple overlapping wellhead protection zones, Ford's answers were false. Ford does not dispute that the Closure Reports initially contained errors, but says these errors were corrected and the reports were approved by the MDEQ in July 2017. Trident says that it also discovered that Ford had not submitted any of its NFA reports to the MDEQ, which means that Ford had not received agency confirmation that its remediation activities had satisfied the cleanup standards of Part 201 of the NREPA. Tridents says that for these reasons, it refused to execute the restrictive covenant.

Trident filed its Motion on December 21, 2017. Trident argues that Ford's breach of contract claim is foreclosed because: 1) by submitting false Closure Reports, Ford materially breached the ECA; 2) by not submitting its NFA reports, Ford did not obtain confirmation that its remediation activities comply with the NREPA, which is a condition precedent to Trident executing the restrictive covenant. Trident also argues that because it is entitled to summary judgment on Ford's breach of contract claim, it logically follows that it is entitled to summary judgment on Counts II and III.

Ford responded ("Response") that: 1) submitting the cover sheets of the Closure Reports with a single error does not materially or substantially breach the ECA; and 2) the language of the ECA does not create a condition precedent, but requires Trident to sign the restrictive covenant upon Ford's request.

II. Legal Standard

    A. Summary Judgment

Under Federal Rule of Civil Procedure 56(a), "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The movant bears the initial burden to inform the Court of the basis for her motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies her burden, the non-moving party must set forth specific facts showing a genuine issue for trial. *Id.* at 324. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Unsupported, conclusory statements are insufficient to establish a factual dispute to defeat summary judgment, as is the mere existence of a scintilla of evidence in support of the non-movant's position; the evidence must be such that a reasonable jury could find in its favor. *Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court "views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court only needs to consider the cited materials, but it may consider other evidence in the record. Fed. R. Civ. P. 56(c)(3). The Court's function at the summary judgment stage "is not to weigh

the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249.

III. Analysis

A. Genuine Issues of Material Fact Exist As To Whether Ford Breached the ECA

Trident says that Ford was obligated under the ECA to use "commercially reasonable efforts" to ensure that its remediation activities comply with Part 213 of the NREPA. Trident says Part 213 requires Ford to submit truthful and accurate UST Closure Reports. Trident says it has an interest in ensuring that Ford's remediation activities comply with the NREPA. By submitting false Closure Reports, Trident says it did not get the benefit it reasonably expected to receive, meaning Ford materially breached the ECA. This material breach, according to Trident, precludes Ford from maintaining a breach of contract action against Trident for its refusal to execute the restrictive covenant.

Ford argues that an error in the Closure Reports (which it corrected), does not constitute a breach because the possibility of inaccuracies are addressed by the ECA and included in the definition of Ford Remediation Activities. Ford says that the errors in the cover sheets have been corrected and accepted by the MDEQ, so Trident cannot show it was denied a benefit it expected to receive. The errors have not and will not affect the completion of the remediation activities, Ford argues, and Trident cannot show any material or substantial breach of the ECA.

Michigan law governs this dispute "because the Court's jurisdiction is premised upon diversity of citizenship." *Vitamin Health, Inc. v. Hartford Cas. Ins. Co.*, 186 F.

Supp. 3d 712, 717 (E.D. Mich. 2016). Under Michigan law, the party that "commits the first substantial breach of a contract cannot maintain an action against the other contracting party for failure to perform." *Chrysler Realty Co., LLC v. Design Forum Architects, Inc.*, 544 F. Supp. 2d 609, 616 (E.D. Mich. 2008) (internal citations and quotations omitted). The determining factor is whether the first breach is substantial. *Id.* "The Michigan Supreme Court has explained that a substantial breach is one where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible … ." *Id.*

> Section 2.01(a) of the ECA reads:
>
> > "For the avoidance of doubt, 'Ford Remediation Activities' shall include any action subsequently required or mandated by Government Authorities to remedy any allegedly inadequate, insufficient, ineffective, deficient, and/or defective performance of the Ford Remediation Activities."

[Motion, Ex. 3, Pg. 5].

A reasonable juror could conclude that the language of the ECA contemplates the correction of errors in the Ford Remediation Activities. Both parties agree that Ford's submission of the UST Closure Reports is part of remedial activities. It arguably follows that taking steps to remedy any "inadequate" or "deficient" performance would include correcting errors in the report cover sheets. Thus, there is a genuine dispute of fact

6

whether by submitting the erroneous Closure Report cover sheets and subsequently correcting them, Ford breached the ECA.

Further, Trident has not pointed to any facts that show that its performance – namely executing the restrictive covenant – was rendered ineffective because Ford submitted erroneous Closure Reports. It argues that it is irrelevant that Ford corrected the cover sheet errors. It says the errors were not corrected until five months after suit was filed, and were only corrected after Trident brought the errors to Ford's attention. While this may be true, a reasonable juror could find that the contract anticipates the correction of errors, and defines these corrections as part of Ford's remediation activities. Further, Ford attached as an exhibit a letter from MDEQ to Trident, in which it stated that the Closure Report cover sheets have been corrected. [Response, Ex. 1, Pg. 1].

Ford sets forth facts to dispute Trident's claim that its initial submissions – subsequently corrected – prevented Trident from getting the benefit it expected to receive from the ECA, which was approved Closure Reports. This breach of contract claim will be submitted to the jury. *Celotex*, 477 U.S. 324.

### B.  The Plain Language Of The ECA Does Not Create A Condition Precedent

Trident argues that its obligation to execute the restrictive covenant is conditioned upon Ford first submitting its NFA reports to the MDEQ and obtaining confirmation from the MDEQ that Ford's physical remediation activities comply with the NREPA. It argues that neither the ECA's language nor the circumstances indicate that the parties intended for Trident to sign the restrictive covenant before Ford completed

7

its performance obligations. Ford's own course of performance, according to Trident, demonstrates that Ford understood that Trident's restrictive covenant obligations would ripen only after Ford completed its obligations under the ECA.

Ford argues that the language of the ECA clearly establishes that Trident must execute a restrictive covenant upon Ford's request. It claims that nowhere in the ECA does it indicate that Trident must execute a restrictive covenant only if Ford has obtained approval from the MDEQ of its remediation activities. Further, the ECA, according to Ford, states that a restrictive covenant is likely to be a component of its remediation activities.

"A condition precedent is a fact or event that the parties intend must take place before there is a right to performance." *Real Estate One v. Heller*, 272 Mich. App. 174, 179 (2006). "[U]nless the contract language itself makes clear that the parties intended a term to be a condition precedent, [the] Court will not read such a requirement into the contract." *Findling v. Lossing*, 2011 Mich. App. LEXIS 754, *12 (Mich. Ct. App. Apr. 26, 2011).

Section 2.01(a) of the ECA says: "Ford shall, at its sole cost and expense … implement associated restrictive covenants and institutional controls." [Motion, Ex. 3, Pg. 5]. Section 2.01(b) states:

> "[t]he Parties acknowledge and agree that the Ford Remediation Activities may involve the imposition and recording of restrictive covenants and institutional controls limiting certain activities on and uses of the Wixom Plant Property."

8

*Id.* Section 3.03(e) says:

> "[Trident] shall cooperate in all reasonable respects with Ford … in carrying out the Ford Remediation Activities, including Ford's efforts to obtain any required government approvals … . Subject to the provisions of Section 2.01, [Trident] agrees to provide Ford its express written consent to execute and record, and *shall execute and record, upon Ford's request*, any restrictive covenant that is a component of Ford's Remediation Activities."

*Id.* at 11 (emphasis added).

The plain language of the ECA makes clear that restrictive covenants were contemplated components of Ford's remediation activities. Further, the ECA's language clearly states that Trident is to execute a restrictive covenant upon Ford's request. Nowhere in the ECA does it say that Trident's execution is conditioned upon Ford submitting NFA reports and obtaining MDEQ approval of remediation activities. Further, Trident does not point to any extrinsic evidence concerning the parties' intent, or course of performance, that suggests otherwise. Because the language of the ECA does not clearly state a condition precedent, the Court will not read one into the agreement.

Ford also claims that the signed restrictive covenant is part of its remediation activities, and must be submitted to MDEQ for its approval of Ford's NFA reports. Ford attaches an email from MDEQ to Ford as evidence of this requirement. [Response, Ex. 2, Pg. 1]. Ford says that Trident is aware of this requirement, and is obligated under the ECA and Part 201 of the NREPA to cooperate with Ford in completion of remediation

9

activities, which would include signing the restrictive covenant. In its reply brief, Trident argues that it does not posit that Ford must secure approval of the NFA reports prior to it executing the restrictive covenant, but asks that Ford secure peer review of its physical remediation activities before asking Trident to sign the restrictive covenant. Trident claims that an executed restrictive covenant is not necessary for Ford to receive peer review from the MDEQ. Because Ford has not secured this peer review, Trident says it has no obligation to execute a restrictive covenant.

Even if it were true that Ford could obtain peer review without submitting an executed restrictive covenant, the plain language of the ECA does not say that Ford must obtain peer review before Trident signs the restrictive covenant.

Trident fails to show that the ECA contains a condition precedent such that Ford's breach of contract claim fails as a matter of law. Accordingly, the Court denies Trident's motion for summary judgment on this claim.

IV. Conclusion

Disputed issues of material fact exist regarding Ford's breach of contract claim. Trident's amended motion for summary judgment is DENIED in its entirety.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: March 20, 2018